### HAYES *v*. SETON.

(*Circuit Court, E. D. New York.* April 26, 1882.)

1. REISSUE—VOID FOR VARIANCE FROM ORIGINAL.

   Reissue 8,597 *held* void, being for a different invention than that of the original.

2. SAME—VOID FOR CLAIMS TOO BROAD.

   Reissue 8,774 *held* void, the claims sued on being broader than the claims of the original, and for matter not claimed in the original reissue, 8,675. Claim 1 *held* to be either limited by the specification; or broader than the original, and being so limited is the same as claim 2, which is not infringed by defendant's structures. Claim 6 *held* not infringed by defendant's structures.

3. SAME.

   Reissue 8,688. Claim 1 void, being broader than the original. Claim 2 not infringed by defendant's structure, which is more like anticipating device of Duisch English patent. Claim 3 is void because it omits one element claimed in this combination in the original. Claim 5 broader than original, and void.

4. SAME—NOT AN INFRINGEMENT.

   Reissue 8,689 not infringed by a sash having only a single flange. Case of *Miller* v. *Bridgeport Brass Co.* commented on and followed.

*J. H. Whitelegge*, for complainant.

*G. G. Frelinghuysen*, for defendant.

BENEDICT, D. J.   This action is founded upon five patents for various inventions employed in' the construction of sky-lights, conservatories, and other glazed structures. Infringement of these patents is denied, and the validity of each of the reissues is contested upon the ground that the reissue is not for the same invention as that described in the original patent, and the further ground that it was illegally issued.

The first patent set forth in the bill is reissue No. 8,597, dated February 25, 1879. The original patent, No. 94,203, put in evidence by the defendant, was issued in 1869. In it the invention is stated to consist of a metallic ridge-box, capable of being used as a ventilator, "so constructed as to admit of an ingress of pure air, which, coming in contact with the impure air of the building, is driven into an upper cavity, which, being perforated, gives the egress; the whole arranged so that all leakage is avoided." The method of constructing this ridge-box is set forth in the specification, and a drawing connected therewith. The drawing represents the rafters of a building, resting against two ridge-boards, separated so as to leave an opening from the inside of the building, between the ridge-boards. Over this opening, and upon the outside of the roof, is a box or frame, G, perforated at its lower edge so as to admit the outside air to the interior

of the box, and having a flange outside of its junction with the roof to prevent leakage between the roof and the box. Across the top of the box is a grating, 5, for the passage of air from the interior of the box into a cap, I, constructed so as to cover the top of the box. This cap extends beyond the sides of the box, and is then perforated to permit the egress of air from the cap. Upon the grating rests a slide, K, perforated to act with this grating so as to open or close the same when desired. The single claim of this original is as follows: "The metallic flange, F, the frame, G, the grating, J, the slide, K, and the cap, I, constructed and arranged, substantially as shown and set forth, for the purposes set forth." The invention described in this patent, and sought to be secured thereby, is a simple box, intended to act as a ridge, and at the same time serve as a ventilator by allowing air from the outside of the building to enter the box, and there mingling with the inside air, then to pass up through the box into the cap, and so out by perforations in the cap, as described. If now, the reissue be examined, it is observable that a feature, nowhere alluded to in the original patent, has been inserted, namely, a plate running up inside of and parallel with the sides of the box, and connecting at its foot with the flange outside the box. This inside plate is termed, in the reissue, "an interior vertical flange," and its function is stated to be to form an air space or flue around the frame on the inside. This is a feature wholly new, and in the reissue it is made an essential part of the invention by the terms of the specification of the reissue. It is also made a necessary element in each claim of the reissue by reference to the drawings and the specifications. By the addition of this new element a substantial change in the structure claimed to have been invented is effected, and as there is nothing in the original patent upon which a right to this new structure can be based, the reissue must be held to cover an invention different from that described in the original, and for that reason void.

The next patent set forth in the bill is reissue No. 8,674, dated April 15, 1879. The validity of this patent is also disputed. The original patent described a metallic bar or rafter intended to be used in the construction of glazed roofs. The construction of this rafter is particularly set forth. Its characteristic features are a short metal body, $a$, a stay-plate, $f$, a hollow moulding, $d$, the same being fitted together and arranged so as to form, on the upper side of the rafter, rabbets, $b$, $b$, for the glasses to rest on, and on the under side gutters, $c$, $c$, to catch the drip. No one of the characteristics of this rafter is

claimed to have been first invented by the patentee. But he claims to have been the first one to employ them in the manner described, and thereby to have invented a rafter which is new in form and useful in result. The original patent also describes a form of cap-plate to be fastened to the upper side of the rafter above the rabbets, between which and the ledge of the rabbet the glasses are to rest. No new result is claimed to have been attained by the use of this cap-plate, but the combination of the cap-plate with the rafter described is alleged to be new and useful. The original patent also describes a form of metal clip constructed to form a lap under and over the adjacent edges of the glasses of a glazed roof, in a direction crosswise to the rafter, and extending so that each end is covered by the cap-plate attached to the rafter. There are three claims in the original patent:

(1) The metallic bar or rafter, A, formed of a hollow sheet-metal body, $a'$ stay-plate, $f$, and hollow moulding, $d$, fitted together and arranged to form rabbets, $b, b$, for the glasses and gutters, $c, c$, substantially as specified. (2) The combination of the cap-plate, $d$, with the hollow metal bar or rafter, A, essentially as shown and described. (3) The clip, I, in combination with the cross gutters, $h$, the main gutters, $c, c$, substantially as specified.

This patent was reissued in 1873, and again in 1879, the latter reissue being the patent set forth in the bill. This last reissue has 15 claims, whereby the scope of the patent is largely extended. Of these the third, fourth, sixth, seventh, ninth, tenth, eleventh, twelfth, thirteenth, fourteenth, and fifteenth are alleged to have been infringed. The invention described in the third claim of the reissue consists of a hollow sheet-metal rafter, having a body, $a$, similar to the body of the rafter described in the original patent, rabbets, $b, b$, similar to the rabbets on the rafter described in the original, gutters, $c, c$, similar to the gutters of the rafter described in the original, and a hollow moulding, $d$, similar to the moulding, $d$, of the rafter described in the original patent.

It will be perceived from the description that the subject-matter of the claim is a rafter differing from the rafter described in the original patent, in this, that it has no stay-plate, $f$. This stay-plate is, in the original, described as one of the characteristic and essential features of the plaintiff's invention. Its omission from the rafter described in the third claim of the reissue effects a substantial change in the combination, and therefore is fatal to the claim. The claim, as made, is for a different invention from that described in the original patent, and for that reason must be held void.

The fourth claim of this reissue is also illegal for the same reason. It covers a rafter differing from the rafter described in the original, in that it has no stay-plate, *f.*

The sixth claim of the reissue is for a hollow sheet-metal rafter having rabbets and gutters like those of the rafter described in the original patent, and also a cap-plate, D, attached. Both the moulding, *d,* and the stay-plate, *f,* which, in the original, are designated as essential features of the invention, are omitted from this claim, and a substantial change in the structure thereby effected. This claim, therefore, is also void, for the reason that it covers a rafter not to be found in the original patent.

The remaining claims of this reissue, alleged to have been infringed in every instance, are intended to enlarge the scope of the patent. And while it may be true in regard to some of them that the subject-matter of the claim is described or suggested in the original patent, it is evident, on the face of the patent, that there was no intention to assert that any of these matters formed part of the patentee's invention, and no intention on the part of the patentee to claim any exclusive right therein. Any person reading the original patent would be justified in the conclusion that no exclusive right to these matters was claimed by the patentee. Such being the case, according to the decision of the supreme court of the United States in *Miller* v. *Bridgeport Brass Co.*, 12 O. G. 667, it is the duty of this court to declare that any right which the patentee may have had to secure these matters by letters patent has been lost by delaying to assert such right for over nine years from the date of the original patent. Says the supreme court: "The claim of a specific device or combination, and an omission to claim other devices or combinations apparent on the face of the patent, are, in law, a dedication to the public of that which is not claimed." This language is applicable to the present patent, and because due diligence was not used to rectify the omission, and to claim these combinations, this court is compelled, by the authority cited, to hold that these claims are invalid, and the reissue to that extent void.

The next patent set forth in the bill is reissue No. 8,675, dated April 15, 1879. To this reissue, also, the defence is set up that it is illegal and void. The original patent was No. 106,157, dated August 9, 1870. It relates to an improvement upon the rafter forming the subject of the patent No. 100,143, already referred to. The improvement is stated to consist in a novel arrangement of stay-plate in the rafter, whereby strength is secured without material addition to the

weight; and also to consist in employing a novel construction of end clip; and also to consist in an indirect arrangement of escape openings from the main gutters to provide for the escape of water, and prevent snow from beating in. A description of these improvements is given in the specification, with reference to drawings annexed.

The claims of the original patent are three in number, and are as follows:

(1) The arrangement of the vertical stay-plate, $a$, with the shell or body, $a$, of the rafter moulding, $d$, rabbets, $b$, $b$, and gutters, $c$, $c$, substantially as specified. (2) The clip, G, formed with corrugation, $b$, made to substitute gutters, and arranged and applied relatively to the glass as described. (3) The arrangement of the end outlets, $f$, $f$, with the hollow body of the lower transom, F, escape apertures, $g$, substantially as specified.

These claims, it will be observed, are—*First*, for a rafter constructed in a certain way; *second*, for the use of a clip of a certain form when applied to the glasses of a glazed roof in the manner described; and, *third*, for the arrangement of outlets for the water to escape from the gutters by outlets under cover of the lower transom, and then by apertures in the end clip at the foot of the roof, arranged intermediate the outlets from the gutters. The elements of these combinations are all old; the combination of elements is what is claimed to be new.

The reissue has seven claims, of which the first, second, and sixth are alleged to have been infringed by the defendant. The first claim of the reissue, like the first claim of the original, is for the combination of the vertical inside plate with a rafter. But while the rafter in the original has a moulding, $d$, the rafter in the first claim of the reissue is described as having a high ridge, and no mention is made of the moulding, $d$, unless such mention be effected by the words "formed essentially as shown." If these words do not have the effect to constitute the moulding mentioned in the specification a part of the rafter and an element of the combination, then the claim is void because for a different structure from that described in the original. If, on the other hand, the words "formed essentially as shown," carry with them every feature of the rafter described, including a "sheet-metal moulding properly secured to the rafter or bar and inside plate, and so connected to the gutters of the rafter as to constitute a brace to prevent them closing together, or a clamp to prevent their spreading, or both," then the first claim of the reissue is for the same thing as that described in the second claim.

The second claim of the reissue appears to be for the same invention described in the original patent, and I therefore pass to the

question whether it has been shown to have been infringed by the defendant. In my opinion such infringement has not been proved. None of the bars or rafters made by the defendant have a moulding secured by rivets and bolts to the rafter or bar, and attached to the inside stay-plate by suitable bolts or rivets, so as to form a brace or clamp for the gutter. And this difference appears to me to take the defendant's structure out of the scope of the plaintiff's patent. But if the defendant's rafter be held to be similar in construction to the rafter described in the claim under consideration, then the claim must, in my opinion, be held void, for the reason that a rafter similar to the defendant's, in the features under consideration, is described in Bunnett's English patent of 1856.

The subject-matter of the sixth claim of this reissue is not found in the structures claimed to be infringing structures. In those structures there is but one set of openings, and those from the gutter directly to the outside.

The next patent set forth in the bill is reissue No. 8,688, dated March 14, 1871. Claims 1, 2, 3, and 5 are alleged to have been infringed.

The subject-matter of the first claim of this reissue differs from anything described in the original, No. 112,594, dated March 14, 1871, in that one essential feature of the structure claimed in the reissue is that it is "formed of one piece of folded sheet metal," and another essential feature is that the rafter has "an upward vertical extension forming a ridge." The rafter described in the original is there expressly stated to be formed of two sheets of metal, and the specifications nowhere allude to any "upward vertical extension." These differences have been insisted upon by counsel for the plaintiff as being important. Moreover, from this first claim of the reissue is omitted the under cap which in the original is made an essential feature. These alterations and additions introduced into the reissue, in my opinion, effect an alteration in the invention, and render the claim void, because for a different invention claimed in the original.

The second claim of this reissue is for "the hollow metallic bar or rafter, ——, constructed substantially of plates, *a* and *c*, bent to support or connect each other, and to form gutters, *b*, *b*, arranged in juxtaposition to each other, and under cover of the base or bases which support the glass, as herein set forth."

In this claim, as in the original patent, mention is made of one feature of the invention, namely, that the gutters, *b*, *b*, are under cover of the bases that support the glass, so that the gutters offer little or

no obstruction to the light passing through the glass. This appears to be the distinctive feature of the rafter sought to be secured by this claim. But no such feature appears in the devices shown in Exhibit No. 11, opposite the marginal numbers 23 and 24, which are described as the infringing devices of the defendant. I am unable, therefore, upon the testimony, to find that this claim has been infringed, unless it be held that the construction of the gutters so as to keep them under cover of the bases is not an essential feature of the invention. But if it be so held, then I must hold the claim void for want of novelty; for the invention described in this claim, so understood, appears in the patent issued to Edward Duisch, August 26, 1848, set up in the answer and duly proved.

The third claim of reissue 8,688 covers a clip, H, constructed of sheet metal, bent to form a groove, h, and a rabbet, i, as set forth. The clip here described differs from the clip in the original patent in this, that a gutter, k, is in the original (see specification in second claim) made an essential part of the invention. In the specification of the reissue, and also in the third claim of the reissue, the gutter is made optional. The effect of this change is to expand the patent and bring within its scope a form of clip not described in the original. The claim must, for this reason, be held void.

The fifth claim of this reissue comes within the rule laid down in *Miller* v. *Bridgeport Brass Co.*, already referred to, and must be held void upon the authority of that case.

The fifth and last patent set up in the bill is reissue No. 8,689, dated April 29, 1879.

The third claim of this reissue is the only claim here in question. This claim is for "the swinging sash, c, provided with exterior and overlapping elastic flanges, f, essentially as described." No infringement of this claim appears in complainant's exhibit model of infringing sky-light, August 17, 1881. The defendant's swinging sash has only a single flange, forming an ordinary joint, without any exterior and overlapping elastic flange, such as described in the patent.

Upon these grounds the bill is dismissed, and with costs.